(159 App. Div. 628)

### KEVAND v. NEW YORK TELEPHONE CO.

(Supreme Court, Appellate Division, Fourth Department. December 5, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 45*)—REGULATION—STATUTES—CONSTRUC-
TION—PENALTIES.

Transportation Corporations Law (Consol. Laws, c. 63) § 103, provides
that every telephone company shall receive dispatches from and for other
telegraph or telephone lines and from and for any individual, on pay-
ment of the usual charges, with impartiality, and if it neglects or refuses
so to do it shall pay $100 for every such refusal or neglect to the person
entitled to have the same so transmitted. *Held*, that such act was de-
signed to prevent discrimination and bad faith in the transmission of
messages and had no application to a telephone company's refusal to per-
mit a patron to talk over his telephone on the ground that his contract
right to service had expired.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§§ 16, 20½; Dec. Dig. § 45.*]

2. TELEGRAPHS AND TELEPHONES (§ 45*) — SERVICE — REFUSAL TO FURNISH —
PENALTY—BAD FAITH.

Plaintiff's contract for telephone service provided that it was termina-
ble by either party on ten days' notice. The company, desiring to raise
its rates, on January 19, 1912, notified plaintiff that his right to service
would terminate on January 29th unless he executed a new contract at
the higher rate. Plaintiff paid no attention to this notice, but on Feb-
ruary 1st, through an error of defendant's bookkeeper, received a bill for
February service at the old rate, which he immediately paid, and then,
during the first three days of February, attempted to use his telephone,
but was not permitted to do so because of his refusal to execute a new
contract, until defendant ascertained that payment had been made for
February, when it furnished him service for that month at the old rate.
*Held*, that defendant's refusal to furnish service during the first days of
February was not in bad faith so as to entitle plaintiff to recover penal-
ties under Transportation Corporations Law (Consol. Laws, c. 63) § 103.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§§ 16, 20½; Dec. Dig. § 45.*]

Kruse, P. J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Julius H. Kevand against the New York Telephone Com-
pany. From a judgment for plaintiff and from an order denying de-
fendant's motion for a new trial on the minutes, it appeals. Reversed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAM-
BERT, and MERRELL, JJ.

Nottingham & Nottingham, of Syracuse, for appellant.
Hogan, Byrne & Byrne, of Syracuse, for respondent.

MERRELL, J. [1] This action is brought to recover statutory
penalties which plaintiff claims defendant incurred under section 103
of the Transportation Corporations Law as the result of cutting off his
telephone service on the 1st, 2d, and 3d days of February, 1912. Sec-
tion 103 of the Transportation Corporations Law, which it is urged
defendant violated, provides as follows: .

"Every such corporation shall receive dispatches from and for other tele-
graph or telephone lines or corporations, and from and for any individual,

and on payment of the usual charges by individuals for transmitting dispatches as established by the rules and regulations of such corporation, transmit the same with impartiality and good faith and in the order in which they are received, and if it neglects or refuses so to do, it shall pay one hundred dollars for every such refusal or neglect to the person or persons sending or desiring to send any such dispatch and entitled to have the same so transmitted. * * *"

Plaintiff is a physician and surgeon residing and practicing his profession in the city of Syracuse, and defendant is a public service corporation furnishing telephone service in such city and elsewhere. On July 25, 1905, the respondent entered into a contract with the Central New York Telephone & Telegraph Company, defendant's predecessor, to place a telephone in his office at 503 University Block in the city of Syracuse; respondent agreeing to pay for the use thereof and for local service at the rate of $48 per year. Said contract contained the following provision:

"Either party may terminate this contract at or after the expiration of the first year by not less than ten days' previous notice in writing to the other party."

Subsequently to the making of said contract the defendant company succeeded to the rights of the Central New York Telephone & Telegraph Company thereunder. The rate of $48 provided by said contract was a special one accorded to physicians. Shortly before the discontinuance of service to plaintiff of which he complains and for which he seeks to recover a penalty, the defendant company had inaugurated a change of rates abrogating the special rate at which it had theretofore furnished service to physicians and rendering all direct connection service at a uniform rate of $60 a year. On January 19, 1912, in accordance with the terms of the contract with plaintiff above quoted, the defendant company served upon plaintiff a notice to the effect that the rate which he had theretofore paid was not in accordance with the standard rate for such class of service as he had enjoyed, and that thereafter a uniform rate would be charged to all users, including physicians, of $60 a year. Said notice requested plaintiff to enter into a new contract in accordance with such rates, as amended, and informed him that in case of his failure so to do on or before the 29th day of January the existing agreement would be terminated. Plaintiff paid no attention to the notice thus served upon him, and as testified to by defendant's local business manager, Warne, he called up plaintiff by telephone on the 30th of January and advised him of the termination of the ten-day period and requested the execution of a new contract. Warne testifies that plaintiff refused to talk with him upon the subject. Plaintiff denies having had such conversation with the local business manager, but it appears without dispute that plaintiff's service was discontinued on the 30th day of January, 1912. No complaint appears to have been made by plaintiff upon such discontinuance at the time it was made. On February 1st, through an error in the office of the defendant company, due to a lack of information on the part of the bookkeeper and clerks in charge, a bill was rendered to the plaintiff covering toll service during the preceeding month of January and for local service for the ensuing month of February at

the rate of $48 per year; the total charge amounting to $9.50. The respondent paid this bill within a few minutes after its receipt by mailing his check to the company, and in due time received a receipt and his voucher from the bank. Thereupon the respondent called upon the telephone company to restore his service, and made a large number of attempts to use his telephone during the first three days of February, but was unable to use the same, being informed upon inquiry at the defendant's head office that his service had been discontinued owing to his refusal to enter into a contract under the new rates. The rendition of the bill containing the charge for local service for the month of February at the old rate of $48 a year seems clearly from the evidence to have been inadvertent on the part of the defendant company, and grew out of a failure on the part of the clerk having in charge the rendition of said bill to understand the true situation between the plaintiff and defendant.

The plaintiff contends that defendant's action in discontinuing service was in bad faith, and that defendant's refusal to permit him to talk over his telephone with patients and others with whom he attempted to talk on the first three days of February was in bad faith, and that thereby the defendant incurred the penalty provided by said statute above quoted. I am unable to agree with plaintiff's contention in this regard. The Transportation Corporations Law was enacted in 1890, and the statute was made applicable to telephone companies and telephone lines for the first at that time. From the peculiar wording of the statute, which says that every corporation shall receive "dispatches from and for other telegraph or telephone lines or corporations, and from and for any individual, and on payment of the usual charges by individuals for transmitting dispatches as established by the rules and regulations of such corporation, transmit the same with impartiality and good faith," etc., it would seem to indicate that the statute was designed to prevent discrimination, partiality, and bad faith in relation to the transmission of messages, and it is clear to me that the Legislature, at the time of the enactment of this statute, had no intention to make it applicable to a refusal on the part of a company to permit a patron to talk over a telephone. The word "telephone" was written into the statute at a time when, by common practice, people who desired to send messages went to the central office and there either wrote out the message to be transmitted by the operator or themslves talked in the booths provided for such purpose. The courts of this state have uniformly held that penal statutes must be strictly construed, and that no element unwarranted by the strict terms of the statute can be imported into it for the purpose of visiting its penal provisions upon an individual. Wichelman v. W. U. Tel. Co., 30 Misc. Rep. 450, 62 N. Y. Supp. 491; Wysocki v. Erie R. Co., 155 App. Div. 798, 140 N. Y. Supp. 950; Goodspeed v. Ithaca St. Ry. Co., 184 N. Y. 351, 77 N. E. 392.

[2] Moreover, it seems to me that, applying the doctrine that the statute in question must be strictly construed in favor of the defendant company, the plaintiff failed to show facts sufficient to bring himself within the statute. The statute provides that:

"Every such corporation shall receive dispatches * * * from and for any individual, and on payment of the usual charges by individuals for transmitting dispatches as established by the rules and regulations of such corporation, transmit the same with impartiality and good faith and in the order in which they are received, and if it neglects or refuses so to do, it shall pay one hundred dollars for every such refusal or neglect to the person or persons sending or desiring to send any such dispatch, etc."

At the time when plaintiff insists defendant company refused and neglected to transmit his dispatch, he had not paid "the usual charges * * * as established by the rules and regulations of the corporation" then in force. He had received notification on the 19th of January previous that the charges, "as established by the rules and regulations of such corporation," were $60 per year. He had been notified that unless he acceded to such increased rates his service would be discontinued. His service was discontinued two days prior to the time when he claims this penalty was incurred. Therefore it seems to me he had not complied with the condition precedent, to wit, the payment of the charges as established by the corporation and in force in the month of February at the time he demanded such service. Inasmuch as the defendant company rendered a bill at the old rate of $48 per year, and when paid by him retained the same, he was in a position to insist upon their rendering the service for which they had charged, and for failure so to do might have maintained an action to recover his damages for breach of contract. But I do not think payment for the February service at the $48 rate, when he knew that the company had changed its rates to $60 per year, was such a payment on his part as would enable him to bring an action for the penalty provided by section 103 of the Transportation Corporations Law.

But indulging in what seems to me the unwarranted assumption that the discontinuance of plaintiff's service constituted a violation of the statute referred to, I think there are other reasons which compel a reversal of the judgment rendered. The learned trial court submitted the case to the jury upon the sole question as to whether or not the evidence given upon the trial indicated bad faith on the part of the defendant company, and I believe the court in this respect correctly charged the jury when he said:

"If, as I said before, notwithstanding the service may have been discontinued without right, if the defendant honestly believed that it had the right to discontinue that service, then there can be no recovery because in that event there would be good faith on the part of the defendant, and it is only where there is an absence of good faith, where bad faith exists and bad faith calls for the action taken and prompts that action, and it is only then that the penalty declared by statute is recoverable of the defendant. As said before, if the defendant honestly believed it had the right to cut the service off, then the only remedy for the plaintiff would be an action for damages for violation of the contract rights existing between the plaintiff and the defendant, as it is only where it appears that there was no right to cut the service off, and under the statute, the defendant being a public service corporation required to serve one and all alike, and only where it acted in bad faith without an honest intent the penalty provided by statute is recoverable."

And, again:

"It is for you to say upon all the evidence whether that penalty is recoverable, and to make it recoverable, as I said before, the plaintiff must show to

your satisfaction that he had a right to that service and that the defendant denied him that service in bad faith and not because it believed it had a right to discontinue the service."

From a careful perusal of the testimony produced upon the trial, I am unable to find any evidence sufficient to show bad faith on the part of the defendant company. It surely had a right to discontinue the contract on the ten days' notice, and at the time plaintiff's service was cut off the defendant was acting wholly within its rights. It is entirely apparent that defendant's refusal to furnish plaintiff the service of which he complains grew out of a mistake and was in no manner due to bad faith on the company's part. The statute does not contemplate a penalty unless partiality, bad faith, or discrimination is shown. The record here, I think, is barren of either. Whatever bad faith there was seems to have been entirely on the part of the respondent. His service was cut off January 30, 1912. On the 19th day of January previous he had received notice that unless he conformed to the amended rates of the company his service would be discontinued at the expiration of the ten-day period provided by the terms of the contract. He appreciated therefrom that his service would be discontinued on the 29th of January unless he signed the new contract. He utterly ignored the notice, and when his service was discontinued on January 29th acquiesced therein. During the intermission of two days prior to February 1st, he took no steps to secure a continuance of service, and only interested himself in that regard when he received the misrendered bill February 1st. Then, with the apparent discernment of an opportunity for sharp practice, the respondent, with the utmost alacrity and within ten minutes of the receipt of the bill, which he must have known was a mistake, mailed his check in payment thereof. The pretense that this alacrity was with no ulterior motive and but an example of customary promptness on his part in meeting his bills seems scarcely borne out by the facts, when we consider that the item of the bill for toll service for the month of January was overdue.

While it does not appear that respondent made any effort to use his telephone on the 30th and 31st days of January, thus apparently acquiescing in the discontinuance of service, pursuant to the notice which he had received, just as soon as the erroneous statement came to him he paid it, and then, after advising with counsel, called up a large number of persons and made unsuccessful attempts to talk with them over his telephone, thereby seeking to create a situation that would later embarrass the company and financially benefit himself. The demand of the plaintiff for cumulative penalties in this action furnishes a possible explanation of the large number of attempts which he made to use his telephone during the time that his service was discontinued. The record as a whole fails to show that the conduct of the respondent was attended with that degree of candidness and good faith which he professes. On the other hand, while the communications over the telephone between the respondent and the defendant's representative were possibly accompanied with some asperity, it was doubtless occasioned by the attitude of the respondent, who, relying on the representative's ignorance of the true situation, was unquestionably endeavoring to cre-

ate a situation of embarrassment to the company by imperious insistence upon a service which he knew he had not paid for at the increased rates then in force. As soon as the telephone company was advised of the situation, although respondent had paid at the $48 rate for February service after his service had been discontinued and when he knew the charge made was less than the rates as then established, decided to suffer the loss occasioned by the mistake of its bookkeeper, and the respondent received service for the month of February at the old rate of $48 per year, although his neighbors paid for the same service at the rate of $60. Thus it will be seen that respondent was pretty fairly treated, rather than that he was discriminated against. Upon the issue of bad faith the evidence so clearly preponderated in favor of the defendant company as to compel a reversal on the ground that the verdict rendered was against the weight of evidence.

I am of the opinion that the evidence fails to show any partiality, bad faith, or discrimination on the part of the defendant company. In the absence thereof there can be no recovery of a penalty herein.

Mr. Justice Foote, in a well-considered opinion in the recent case of Wysocki v. Erie R. Co., 155 App. Div. 798, 140 N. Y. Supp. 950, clearly states the rule in relation to actions for a penalty. Referring to another penal statute, Judge Foote says:

"This is a penal statute. To recover under it plaintiff has the burden of proving the case clearly within its terms, and the defendant is entitled to the benefit of any reasonable doubt of the application of the statute to the case as made."

In Wichelman v. W. U. Tel. Co., 30 Misc. Rep. 450, 62 N. Y. Supp. 491, which was an action to recover a penalty under section 103 of the Transportation Corporations Law for failure on the part of the defendant to transmit messages with impartiality and in good faith and in the order in which they were received, Justice Leventritt thus states the rule:

"The provision invoked is penal and must be strictly construed. Romberg v. Kouther, 27 Misc. Rep. 227 [57 N. Y. Supp. 729]. The imposition of the penalty must be limited to acts of partiality, bad faith, or preference, in the order of transmission. To sustain his position the plaintiff would import into the statute other elements unwarranted by its terms."

And again:

"The obvious intent is expressed in clear language; it was designed to prevent favor and discrimination in the transmission of messages. It is hardly necessary to invoke the rule of strict construction; the meaning is plain without it."

And in the case of Gifford v. Glen Telephone Co., 54 Misc. Rep. 468, 470, 106 N. Y. Supp. 53, 54, also involving an action for a penalty under section 103 of the Transportation Corporations Law, Mr. Justice McLaughlin thus interprets the statute:

"The statute imposes the penalty not for an error of judgment of one of defendant's operators, a defective instrument, or a misunderstanding as to whether the required charge for a message had been paid, but solely for the refusal to transmit dispatches with impartiality, good faith and in the order of their reception, after payment of the usual charges as established by the rules and regulations of such corporation."

This case is entirely lacking in any evidence to show any bad faith on the part of the defendant company, and without such evidence the plaintiff cannot recover the penalty provided by the statute.

The judgment and order appealed from should be reversed, and judgment absolute ordered for the defendant. All concur, ROBSON and LAMBERT, JJ., in result only, except KRUSE, P. J., who dissents in a memorandum and votes for affirmance.

KRUSE, P. J. I dissent upon the following grounds:

1. I am of the opinion that a refusal by a telephone company in bad faith to send a prepaid message at all is as much a discrimination within the statute, as where it shows partiality in sending messages out of the order in which it receives them; also, that the statute applies to a message whether it is offered at a public station or through a private telephone connected with the public station; and that, I think, is so whether the payment is made for the specific message offered and refused, or included in a payment for messages covering a given period of time.

2. Bad faith may be found from the evidence in the record. The defendant's representative, although informed that the plaintiff had paid for February, did not return or offer to return what the plaintiff had paid, but persisted in refusing to transmit plaintiff's messages unless he signed the contract at the advanced rate, including February for which he had paid. Upon the plaintiff's refusal to sign the contract and pay the advanced rate, the defendant restored service at the old rate. Whether the defendant was in good faith in making the claim that its refusal to transmit the plaintiff's messages, for which he had paid, was to avoid the charge of discrimination which might be made against it, was a question of fact. Concededly, some of defendant's patrons were receiving the same service at a less rate than others; just how many does not appear. From this and the other circumstances it would seem that it was a question of fact as to whether a case was made out against the defendant under the statute.

I think the learned trial judge clearly and correctly submitted the case to the jury, and that his order in refusing to set the verdict aside should not be disturbed.